# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

CHIWANA CRANDELL,

                              Plaintiff,                    9:17-cv-00755 (BKS/CFH)

v.

KEVIN ROSS, et. al.,

                              Defendants.

**Appearances:**

*For Plaintiff:*
Jay H. Tanenbaum
Jay H. Tanenbaum Law Firm
14 Wall Street, Suite 5F
New York, NY 10005

*For Defendants Anthony J. Annucci, Sheryl Zenzen, Duane Artus, and Leigh Collins:*
Letitia James
Attorney General of the State of New York
David A. Rosenberg
Assistant Attorney General, of Counsel
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Chiwana Crandell brings this 42 U.S.C. § 1983 action alleging that Defendants Kevin Ross and Gary Cooper with the New York State Department of Corrections and Community Supervision ("DOCCS"), DOCCS Acting Commissioner Anthony J. Annucci, Albion Correctional Facility Superintendent Sheryl Zenzen, Duane Artus, Leigh Collins, and John Does 1-10 violated her right to be free from cruel and unusual punishment and her right to

due process under the Eighth and Fourteenth Amendments to the United States Constitution. (Dkt. No. 38, ¶ 1). Defendants Annucci, Zenzen, Artus, and Collins[1] move under 28 U.S.C. § 1404(a) to transfer this case to the Western District of New York and under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Second Amended Complaint. (Dkt. No. 47). Plaintiff opposes Defendants' motion. (Dkt. No. 58). For the reasons that follow, Defendants' motion to transfer is granted. The Court does not address Defendants' motion to dismiss, but rather leaves that decision to the transferee court.

## II.     FACTS[2]

Between 2011 and August 2015, Plaintiff was an inmate at the New York State Albion Women's Correctional Facility ("Albion") located in Albion, New York.[3] (Dkt. No. 38, ¶ 16). In early 2015, Plaintiff learned that there "would likely be" a hearing before a Time Allowance Committed Board ("TAC Board") to determine whether she was eligible for "early release" in September 2015, "as opposed to September, 2016." (*Id.* ¶ 25).

At some point in 2015, Plaintiff "was assigned to a prison job" where Defendant Cooper, "a civilian non uniformed employee" at Albion, and Defendant Ross, a uniformed corrections officer ("C.O.") at Albion, worked and supervised the inmate workers including Plaintiff." (*Id.* ¶¶ 4–5, 24). Cooper and C.O. Ross were in positions of authority over Plaintiff. (*Id.* ¶ 24).

In March 2015, Plaintiff "was blackmailed, harassed, and terrorized into engaging into sex acts" with Defendants Cooper and Ross at Albion. (*Id.* ¶¶ 4–5, 16). From March to July 2015, Cooper and C.O. Ross "repeatedly sexually harassed, raped and assaulted" Plaintiff. (*Id.*

---

[1] This motion is only on behalf of the four identified individual defendants. Defendants Ross and Cooper are represented separately and have not appeared in connection with the present motion.

[2] The facts are taken from the Second Amended Complaint and accepted as true for the purposes of this motion. *See Cerussi v. Union Coll.*, 144 F. Supp. 265, 266 (S.D.N.Y. 2001).

[3] Albion is in Orleans County, which is located in the Western District of New York. 28 U.S.C. § 112(d).

¶ 17). C.O. Ross forced Plaintiff "to go to the J1 laundry room," which had "secluded areas that were not equipped with surveillance cameras." (*Id.* ¶ 22). Cooper forced "Plaintiff . . . to go to the C Basement or Mezz hall area," which had "secluded areas that were not equipped with surveillance cameras." (*Id.* ¶ 23). Plaintiff "was threatened that her early release would be sabotaged or revoked" and that she would be "retaliated against for finally refusing to engage in sex acts." (*Id.* ¶ 16).

Cooper and C.O. Ross told Plaintiff "they had pull" with the TAC Board and the administration at Albion and that "they would see to it that she would receive early release in exchange for sex." (*Id.* ¶ 26). They threatened "that unless she went along and kept quiet about it" they would "sabotage her hearing" to ensure she lost early release in 2015. (*Id.*). Cooper and C.O. Ross also warned that even if she received an early release determination from the TAC Board, they would "see to it that early release would be revoked if she ever reported or otherwise complained about it." (*Id.*).

Beginning in May 2015, after "having been raped," "Plaintiff made repeated requests to see a gynecologist as she was not feeling well." (*Id.* ¶ 29). Her requests were denied and she was "compelled to file a written grievance." (*Id.*). "A grievance hearing date was scheduled for on or about August 25, 2015." (*Id.*).

In June 2015, Plaintiff received a letter from the TAC Board informing her that "early release would be permitted." (*Id.* ¶ 27). Shortly after receiving the letter, Cooper "caused the Plaintiff to be fired from her prison job when she finally refused to have sex with him again." (*Id.*).

In August 2015, Plaintiff "reported the assaults" to Defendant Artus, the deputy of administration at Albion, and Defendant Collins, "a ranking corrections officer at Albion." (*Id.*

3

¶¶ 9–10, 20, 28). Deputy Artus and C.O. Collins "intimidated and threatened her with retaliation and told her it was best for her if she did not complain about it." (*Id.* ¶ 28). Deputy Artus "warned the Plaintiff that she was putting her early release in jeopardy by complaining," and C.O. Collins "began to chant 'SHU' to intimidate the Plaintiff by referring to special housing unit as a disciplinary measure for even mentioning what happened to her." (*Id.* ¶ 20).

In August 2015, Plaintiff was examined by a gynecologist, who diagnosed chlamydia.[4] (*Id.* ¶ 30). At some point, "it was discovered that [Plaintiff's] medical records and or information there from had been unlawfully circulated in the prison including the humiliating diagnosis of chlamydia," in violation of her privacy rights. (*Id.* ¶ 31). This "publication" of Plaintiff's medical records was "part of the campaign of intimidation and retaliation against her." (*Id.*). Plaintiff filed a grievance regarding the publication of her medical records and a hearing date was scheduled for August 25, 2015. (*Id.*).

On August 24, 2015, the day before her grievance hearing, Plaintiff "was abruptly and summarily transferred to Bedford Hills Correctional Facility, where she remained until her release from prison on September 3, 2015." (*Id.* ¶ 32).

Plaintiff alleges that Annucci, Acting Commissioner of DOCCS, and Zenzen, superintendent of Albion, "facilitated th[e] harassment, rape and other recurrent sexual victimization by permitting supervisory officers such as Ross and Cooper to operate in the manner" alleged, "by failing to monitor (through cameras or otherwise) known at-risk areas where the rapes and assaults took place," and "permitting male only on female supervision." (*Id.* ¶ 36). Plaintiff further alleges that Commissioner Annucci and Superintendent Zenzen allowed

---

[4] Plaintiff never tested positive for any disease in the four previous years of her incarceration. (Dkt. No. 38, ¶ 34). "Except for having been raped in prison . . . there was no other person with whom [Plaintiff] had sexual relations while incarcerated." (*Id.*).

4

the assignment of male officers "to posts in which they have unmonitored contact and complete discretion and control over incarcerated women," and

> failed to employ obvious measures to reduce the risk of rape and sexual abuse of incarcerated women by correction officers, such as heightened monitoring of behavior indicative of ongoing sexual abuse, appropriately placed and functional surveillance cameras installed and maintained without staff knowledge, exit interviews of incarcerated women upon transfer or release, random interviews of staff, and more frequent, unannounced rounds by supervisory officials.

(*Id.* ¶¶ 39, 42).

According to the Second Amended Complaint, Plaintiff lives in New York, New York. (*Id.* ¶ 3). The Second Amended Complaint alleges that Defendants Cooper and Ross reside in New York State, and that all of the defendants, with the exception of Superintendent Annucci, were employed at Albion. (*Id.* at ¶¶ 4–6, 9–10).

## III. MOTION TO TRANSFER

According to Plaintiff, because Commissioner Annucci "is the acting Commissioner of [DOCCS] located in Albany, New York," which is in the Northern District, "[h]is presence in the action renders venue in this district proper" under 28 U.S.C. § 1391(b).[5] (Dkt. No. 58, at 13). Defendants have not addressed the applicability of §1391(b) here; Defendants seek transfer of venue in the interest of justice under 28 U.S.C. § 1404(a). (Dkt. No. 47-1). Plaintiff opposes transfer, asserting that "the factors weigh in favor of the Plaintiff [sic] initial venue choice." (Dkt. No. 58, at 14).

---

[5] It is not clear on which provision of § 1391(b) Plaintiff relies. Under 28 U.S.C. § 1391(b)(1), a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." The record, however, does not reflect the residence of Annucci or the residence of every defendant. (*See* Dkt. No. 58, at 13 (Plaintiff acknowledges that "[i]t is currently unknown where Artus and Collins reside")).

A court may transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). In determining whether to transfer for convenience, a court is to consider several factors, including:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (quoting *D.H. Blair*, 462 F.3d at 106–07). The first factor—the plaintiff's choice of forum—"is given great weight," *D.H. Blair*, 462 F.3d at 107, and "is presumptively entitled to substantial deference," *Gross v. British Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) ("[A] plaintiff's choice of forum should rarely be disturbed."). Ultimately, the party requesting transfer bears the burden of establishing the propriety of transfer by a clear and convincing showing. *See N.Y. Marine*, 599 F.3d at 114; *Ward v. Stewart*, 133 F. Supp. 3d 455, 461 (N.D.N.Y. 2015).

It is undisputed that this case could have been brought in the Western District of New York, where a "substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Accordingly, the Court must consider the factors outlined above to determine whether transfer is warranted in this case.

A.   **Plaintiff's Choice of Forum**

Deference to a plaintiff's choice of forum is especially strong where the plaintiff has chosen her home forum, as "it is reasonable to assume that this choice is convenient." *Piper*, 454 U.S. at 255–56. The Northern District, however, is not Plaintiff's home forum,[6] and the events at issue occurred at Albion in the Western District. "[W]hen the plaintiff selects a forum that is not its home and that has only a tenuous connection to the dispute, a court will defer to the plaintiff's choice of forum if it appears that the plaintiff has not engaged in forum shopping and that its 'choice of forum has been dictated by reasons that the law recognizes as valid.'" *Mirror Worlds Techs., LLC v. Facebook, Inc.*, No. 17-cv-3473, 2017 WL 5634127, at *3, 2017 U.S. Dist. LEXIS 192662, at *7 (S.D.N.Y. Nov. 20, 2017) (quoting *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71–72 (2d Cir. 2001)). Here, Plaintiff asserts that she chose the Northern District because she has "limited financial means" and it would "be a great hardship on her to have to travel to the Western District for proceedings." (Dkt. No. 58, at 14). As there is no evidence that Plaintiff chose the Northern District in an attempt to gain a tactical advantage over Defendants, the Court accords deference to her choice of forum. *See Hershman v. UnumProvident Corp.*, 658 F. Supp. 2d 598, 601 (S.D.N.Y. 2009) (finding that the "plaintiff's choice of forum weigh[ed] against a transfer," but was "not controlling," where the plaintiff's choice of forum was not the "plaintiff's home forum and the events giving rise to the action occurred elsewhere," noting that there was "no evidence that plaintiff chose the Southern District to give him an improper advantage or put defendants at a tactical disadvantage"). Thus, this factor weighs against transfer.

---

[6] The Southern District is Plaintiff's home forum.

**B.    Convenience of the Parties and Witnesses**

"The convenience of parties and witnesses is considered the essential criteri[on] under the venue statute." *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998) (quoting *Cento Grp., S.p.A. v. OroAmerica, Inc.*, 822 F. Supp. 1058, 1060 (S.D.N.Y. 1993)). Defendants assert that "[i]t would be unreasonable under the circumstances to require the defendants and witnesses with relevant knowledge or information to travel to appear before this Court." (Dkt. No. 47-1, at 7). Defendants do not identify any witness or indicate where any witness—or individual defendant other than Commissioner Annucci—is located. *See Breeden v. Tricom Bus. Sys., Inc.*, 244 F. Supp. 2d 5, 10 (N.D.N.Y. 2003) ("To succeed on a transfer motion, however, the moving party . . . must provide the court with a specific list of who will be inconvenienced by the present forum witnesses and general statements of what their testimony will cover."). Nevertheless, "a failure to identify key witnesses may not be fatal to a motion for transfer where there are other grounds for a change of venue." *Marshall v. Annucci*, No. 16-cv-86222018 WL 1449522, at *12, 2018 U.S. Dist. LEXIS 47534, at *35–36 (S.D.N.Y. Mar. 22, 2018) (citing *Pence v. Gee Grp., Inc.*, 236 F. Supp. 3d 843, 856 (S.D.N.Y. 2017)). In this case, because the events at issue occurred at Albion, "it is reasonable to assume that most of the witnesses will be located at or near th[at] facilit[y]." *Matthews v. Cuomo*, No. 16-cv-4210, 2017 WL 2266979, at *2, 2017 U.S. Dist. LEXIS 71550, at *5 (S.D.N.Y. May 1, 2017) (citing *Keitt v. New York*, No. 12-cv-2350, 2013 WL 3479526, at *3, 2013 U.S. Dist. LEXIS 96397, at *9 (S.D.N.Y. July 10, 2013) (finding that witnesses in prison abuse suit were likely to be located at or near the correctional facilities where the abuse occurred)). This factor therefore weighs in favor of transfer.

### C. Locus of Operative Facts

"The locus of operative facts is a primary factor in determining whether to transfer venue." *Steck v. Santander Consumer USA Holdings Inc.*, No. 14-cv-6942, 2015 WL 3767445, at *6, 2015 U.S. Dist. LEXIS 78612, at *20 (S.D.N.Y. June 17, 2015) (internal quotation marks omitted). The "locus of operative facts" is the place where the "acts or omissions for which Defendants could be held liable occurred." *Solar v. Annetts*, 707 F. Supp. 2d 437, 442 (S.D.N.Y. 2010).

Here, the operative facts have a minimal connection to the Northern District: only DOCCS, the agency headed by Defendant Commissioner Annucci, has a principal office in the district.[7] (Dkt. No. 38, ¶¶ 7-8). Further, it is undisputed that Albion is where Plaintiff was allegedly raped, sexually abused and harassed, and retaliated against for reporting the sexual assaults. Thus, the Western District is the locus of operative facts, and this factor weighs heavily in favor of transfer. *See Tlapanco v. Elges*, 207 F. Supp. 3d 324, 332 (S.D.N.Y. 2016) (concluding that the Eastern District of Michigan was "the locus of operative facts," where the deprivation of various constitutional and civil rights took place); *see also Berger v. Cushman & Wakefield of Pa., Inc.*, No. 12-cv-9225, 2013 WL 4565256, 2013 U.S. Dist. LEXIS 122547, at *33–34 (S.D.N.Y. Aug. 28, 2013) (finding that, where "the locus of operative facts constitutes the Eastern District of Pennsylvania" and there were "no facts alleged to have occurred in the Southern . . . District of New York," "this factor weighs heavily in favor of transfer" to the Eastern District of Pennsylvania).

---

[7] Further, the Amended Complaint contains only conclusory allegations concerning Commissioner Annucci's purported conduct in this case. (*See, e.g.*, Dkt. No. 38, ¶ 8 (alleging that Commissioner Annucci "is responsible for the policies and practices that have resulted in the deprivation of Plaintiffs' rights under federal law, and he has railed [sic] to take necessary and appropriate actions to prevent such deprivations")).

9

D.     **Location of Documents and Access to Proof**

Plaintiff asserts that "[i]t is . . . presumed that DOCCs maintains its files regarding sexual assault and harassment claims at Albion and the other women's prison facilities in the state in Albany." (Dkt. No. 58, at 15). The Court declines to accord any weight to Plaintiff's speculation about the location of files. Further, "[t]he location of relevant documents and the ease of access to sources of proof is mostly a neutral factor, in light of "the technological age in which we live, where there is widespread use of, among other things, electronic document production." *Tlapanco v. Elges*, 207 F. Supp. 3d 324, 330–31 (S.D.N.Y. 2016) (quoting *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 258 (E.D.N.Y. 2010)). The Court therefore finds this factor neutral.

E.     **Availability of Process**

As the parties do not address this factor, it does not bear on the Court's analysis.

F.     **Relative Means of the Parties**

"The relative means of the opposing parties may support or discourage transfer of venue if there is a significant financial disparity between the parties." *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 290 (S.D.N.Y. 2004). But if "proof of such disparity is not adequately provided, or does not exist, this is not a significant factor to be considered." *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 32 (E.D.N.Y. 2014) (internal quotation marks omitted). Here, Plaintiff maintains that "[s]he is a resident of New York City with limited financial means" and that it "would be a great hardship on her to have to travel to the Western District for proceedings." (Dkt. No. 58, at 14). Plaintiff, however, provides no evidence to substantiate this claim. Further, Plaintiff will have to travel several hours to attend proceedings regardless of whether they are in the Northern or Western District. The Court therefore finds this factor neutral. *See Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 578 (E.D.N.Y. 2014)

(concluding that because "plaintiffs have not supplied the court with any documentation showing that transfer would be financially burdensome, this factor is neutral")

While the Court accords deference to Plaintiff's choice of forum, the Court concludes it is outweighed by the convenience to the parties and the locus of operative facts, both of which weigh in favor of transfer to the Western District. *See Tlapanco*, 207 F. Supp. 3d at 333 ("The two most important transfer factors—the convenience of the witnesses and the locus of operative facts—strongly support transferring this action to the Eastern District of Michigan. In fact, the only factor weighing against transfer is Tlapanco's decision to bring suit here. But even that factor is less significant in this case, given that Tlapanco has not brought suit in his home forum."). Accordingly, the Court, in its discretion, grants Defendants' motion to transfer.

IV. **CONCLUSION**

For these reasons, it is

**ORDERED** that Defendants' motion to transfer (Dkt. No. 47) is **granted**; and it is further

**ORDERED** that a determination regarding the Defendants' motion to dismiss (Dkt. No. 47) is left to the transferee court in the Western District of New York; and it is further

**ORDERED** that the Clerk of the Court is directed to transfer this action in its entirety to the Western District of New York.

**IT IS SO ORDERED.**

Dated: July 23, 2019
      Syracuse, New York

                                                *Brenda K. Sannes*
                                                Brenda K. Sannes
                                                U.S. District Judge